UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

HOWARD GRADY,

        Petitioner,

v.                                           Case No. 18-cv-615-pp

CHERYL EPLETT,[1]

        Respondents.

**ORDER DENYING PETITION FOR WRIT OF *HABEAS CORPUS* (DKT. NO. 1), DISMISSING CASE WITH PREJUDICE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

On April 18, 2018, the petitioner, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a petition for writ of *habeas corpus* under 28 U.S.C. §2254 challenging the 2014 revocation of his probation. Dkt. No. 1. As respondents, he named the State of Wisconsin and Judy Smith. Id. at 1. On August 12, 2019, the then-named respondents filed a motion to dismiss the petition. Dkt. No. 13. Ten days later, on August 22, 2019, the petitioner filed a "Reply Brief of Howard Grady Brief on the Merits of the Petitioner Claims." Dkt. No. 15. The respondent filed a reply, dkt. no. 16, and on March 31, 2020, the court granted the respondents' motion to the

---

[1] Under Rule 2 of the Rules Governing Section 2254 Cases, "[i]f the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody." The petitioner is an inmate at Oshkosh Correctional Institution. https://appsdoc.wi.gov/lop/home.do. This order reflects Warden Cheryl Eplett as the respondent.

extent that it dismissed one of the grounds for relief the petitioner had listed, dkt. no. 17.

The respondent answered the petition on May 12, 2020. Dkt. No. 20. A week later, the petitioner filed a document titled "Exhibit-C." Dkt. No. 21. On December 30, 2020, the petitioner filed a "Motion for Relief" (asking why his petition had not yet been decided).[2] Dkt. No. 22. Three weeks later, the court construed the petitioner's filings at Dkt. Nos. 15 and 21 as briefs in support of his petition and amended the briefing schedule. Dkt. No. 23. On March 5, 2021, the respondent filed a brief in opposition to the petition. Dkt. No. 24. A week later, the petitioner filed a document titled "Petitioner Rely Brief For Appellant." Dkt. No. 25.

This order denies the petition, dismisses the case and denies a certificate of appealability.

**I.    Introduction**

    A.    <u>Underlying State Case</u>

        1.    *Factual background*

The court recounted the relevant factual background in its order granting in part and denying in part the respondent's motion to dismiss the petition:

---

[2] The petitioner asked whether the federal courts were shut down because of COVID-19, and asked why the court had not may any decision on his April 2018 petition, noting that the final brief was submitted May 20, 2020. Dkt. No. 22 at 2. The federal courts did not "shut down" due to the pandemic. The reason it has taken the court so long to address the petition is not because of the pandemic. It is because of the court's regular caseload, which includes hundreds of civil cases in addition to a full criminal case load.

> In July of 2014, the petitioner was convicted in state court of being party to the crime of burglary; the sentencing court withheld sentence and placed him on probation. Dkt. No. 1-1 at 1. About a month later, police responded to a domestic violence incident at petitioner's home. Id. at 2. They found the petitioner's girlfriend ("K.C.") "possibly seizing" and "with evident injuries to her head, face, and body." Id. K.C. told police that the petitioner repeatedly struck her with a hammer and threatened to kill her. Id. at 2.

Dkt. No. 17 at 1-2 (citing Dkt. No. 9 at 4). A week later, K.C. provided law enforcement with a written statement reiterating her allegations against the petitioner. Dkt. No. 20-2 at 17. In her written statement, K.C. explained that she rented a room in the petitioner's sister's house, that she and the petitioner had dated in the past and that she had "initiated [a] breakup because of [the petitioner's] criminal [and] violent behavior." Id. at 19. She stated that

> [o]n 9-1-14, I was sleeping around 1 p.m. I was woke up from my sleep on this day by [the petitioner] who was straddling me [and] holding my arms down with his knees. [The petitioner] was hitting me repeatedly in the head with a hammer. The head of the hammer was wrapped in plastic. As he was hitting me he kept saying "Bitch, I'm going to kill you." At one point I was able to get my left arm free [and] block one of the hammer blows. At that time he started hitting me with the hammer on the rest of my body [and] he was also trying to choke me. I eventually passed out [and] when I woke up [the petitioner] was gone. All my bloody sheets [and] bedding were gone when I came to. I called 911 when I woke up [and] I was taken to the hospital.

Id. at 19-20. Responding officers found a hammer that matched K.C.'s description in an upstairs hallway and "blood-soaked sheets in an alley garbage can." Dkt. No. 20-3 at 2.

  2. *Revocation proceedings*

On October 23, 2014, Administrative Law Judge (ALJ) Vince Varone held a revocation hearing at the Milwaukee Secure Detention Facility. Dkt. No. 20-2

3

at 15. The petitioner appeared with Attorney Glenn Givens. Id. At the hearing, one of the responding officers and the Department of Corrections (DOC) agent who met with K.C. testified to their observations of K.C. "and what she related to them." Dkt. No. 20-3 at 5. "The evidence also included the written report of another investigating officer" and K.C.'s written statement. Id. "Although K.C. told the [DOC] agent with whom she dealt that she would attend the final revocation hearing, she did not appear." Id. at 3. The next day, the ALJ revoked the petitioner's probation based on the incident with K.C. Dkt. No. 20-2 at 15, 18. Shortly after the final revocation hearing, Attorney Givens resigned. Dkt. No. 20-3 at 2.

On May 12, 2015, the Ozaukee County Circuit Court held a sentencing hearing on the revocation. Dkt. No. 20-6. Attorney Robert Buckett appeared as the petitioner's successor counsel at sentencing. Dkt. No. 14-4 at 7. The court sentenced the petitioner to seven and a half years of initial confinement followed by five years of extended supervision. Dkt. No. 20-6 at 9-10.

### 3. *State-court petition for writ of habeas corpus*

On December 6, 2017, the Court of Appeals denied the petitioner's *habeas* petition. Dkt. No. 20-3. Observing that "[a] decision based entirely on hearsay is sufficient to prove a probation violation 'so long as the hearsay is reliable,'" the Court of Appeals rejected the petitioner's confrontation and due process clause claims. Id. at 5. The Court of Appeals denied the petitioner's ineffective assistance of counsel claim, finding that "[the petitioner's] sketchy and conclusory allegations of ineffectiveness against Givens [did] not

4

demonstrate either deficient performance or prejudice." Id. at 7. It reasoned that the petitioner "was given the tools to challenge the revocation decision," and "[f]or some reason that he [did] not articulate, he chose not to use them." Id. Stating that "the common thread in all of [the petitioner's] arguments [was] that his probation would not have been revoked," the court construed the ineffective-assistance-of-counsel argument as a claim "that [t]he [petitioner] wanted his direct appeal to challenge the revocation decision." Id. at 8. The court concluded that the petitioner "had several other adequate remedies available" that he chose not to pursue, including administrative appeal, a *certiorari* petition for review of the revocation decision and a *pro se* appeal from the judgment after revocation. Id. at 9.

B.     Federal *Habeas* Petition (Dkt. No. 1)

On April 18, 2018, the petitioner filed his federal *habeas* petition. Dkt. No. 18. On June 11, 2019, the court screened the petition under Rule 4 of the Rules Governing Section 2254 Cases, concluding that the petitioner "stated three potentially cognizable *habeas* claims:" (1) a violation of his Sixth Amendment right to confront an adverse witness, (2) a due process violation from the ALJ's reliance on hearsay, and (3) ineffective assistance of counsel. Dkt. No. 10 at 7. The court allowed the petitioner to proceed, ordered the respondent to answer or otherwise respond to the petition and set a briefing schedule. Id. at 7-9. The court noted, however, that its screening order did not address the merits of any of the petitioner's claims. Id. at 5.

Two months later, the respondent filed a motion to dismiss the petition. Dkt. No. 13. The respondent argued that the state court's denial of relief based on adequate and independent state procedural law grounds required this court to dismiss the federal *habeas* petition. Dkt. No. 14 at 4. The respondent stressed that the Wisconsin Court of Appeals had denied the petitioner's confrontation and hearsay claims under a state rule precluding relief where a petitioner has an adequate remedy at law. Id. at 6. The respondent emphasized that the state court had found that the petitioner "chose not to pursue the proper avenue of relief—certiorari review." Id. The respondent argued that the state court had denied the petitioner's ineffective assistance of counsel claim because he failed to "develop his argument enough to trigger a protected interest." Id. at 7.

On March 31, 2020, the court granted in part and denied in part the respondent's motion to dismiss. Dkt. No. 17. Because it "[could not] definitively say that the December 6, 2017 decision on the petitioner's confrontation clause and due process claims rested primarily on a state law procedural bar," the court denied the respondent's motion to dismiss those claims. Id. at 13. Regarding the petitioner's ineffective assistance of counsel claim, however, the court concluded that the Wisconsin Court of Appeals had expressly and primarily relied on a well-established state procedural rule to deny relief. Id. at 16. Seeing no cause or prejudice for the petitioner's default, the court granted the respondent's motion to dismiss the petitioner's ineffective assistance of counsel claim. Id. at 16-17. On May 12, 2020, the respondent answered the

6

remaining claims, asserting that the petitioner was not entitled to relief. Dkt. No. 20.

On May 20, 2020, the petitioner filed a brief in support of the petition.[3] Dkt. No. 21. The petitioner contended that the ALJ's consideration of K.C.'s hearsay statements was unconstitutional. Dkt. No. 21 at 4. On March 5, 2021, the respondent filed a brief in opposition to the petition. Dkt. No. 24. The respondent argues that the petitioner is not entitled to *habeas* relief because the Wisconsin Court of Appeals' decision was "not contrary to United States Supreme Court precedent, and [the petitioner] makes no attempt to argue otherwise." Dkt. No. 24 at 8.

## II. Analysis

### A. Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant *habeas* relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Miller v. Smith, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. §§2254(d)(1), (2)). A federal *habeas* court reviews the decision of the last state court to rule on the

---

[3] On January 20, 2021, this court construed the petitioner's filings at Dkt. Nos. 15 and 21 as briefs in support of the petition, although they were not captioned that way. Dkt. No. 23 at 3.

7

merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Renico v. Lett, 559 U.S. 766, 773 (2010) (quoting Williams v. Taylor, 529 U.S. 362, 410 (2000)). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 71 (2003) (emphasis added). In other words, §2254(d)(1) allows a court to grant *habeas* relief only where it determines that the state court applied federal law in an "objectively unreasonable" way. Renico, 559 U.S. at 773. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 102 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "The standard under §2254(d) is 'difficult to meet' and 'highly deferential.'" Saxon v. Lashbrook, 873 F.3d 982, 987 (7th Cir. 2017) (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011)).

B.  Confrontation Clause and Due Process Claims

The petitioner argues that (1) when the ALJ relied on K.C.'s hearsay testimony to revoke the petitioner's probation, he violated the petitioner's rights under the Confrontation Clause, dkt. no. 21 at 4-5; and (2) K.C.'s hearsay

8

statements were unreliable, and therefore, the ALJ's reliance on them in his decision violated the petitioner's due process rights, id. at 10-11. The petitioner is not entitled to relief on these claims.

"[R]evocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Morrissey v. Brewer, 408 U.S. 471, 480 (1972). The Confrontation Clause of the Sixth Amendment provides that in all criminal prosecutions, the accused enjoys the right to be confronted with the witnesses against him. U.S. CONST. amend. VI. In Crawford v. Washington, 541 U.S. 36, 68 (2004), the Supreme Court held that for a court to admit testimonial hearsay in a criminal prosecution, the Sixth Amendment requires that the declarant be unavailable and the defendant have had a prior opportunity for cross-examination. "But parole revocations are not criminal prosecutions for Sixth Amendment purposes, so *Crawford* is inapplicable." Schmanke v. Irvins, 207 F. App'x 655, 658 (7th Cir. 2006) (citing United States v. Kelley, 446 F.3d 688, 692 (7th Cir. 2006); United States v. Hall, 419 F.3d 980, 985-86 (9th Cir. 2005)).

The fact that a revocation proceeding is not a criminal prosecution does not mean that a parolee is not entitled to due process; termination of parole "calls for some orderly process, however informal." Morrissey, 408 U.S. at 482. Due process, however, "is flexible and calls for such procedural protections as the particular situation demands." Id. at 481. The Supreme Court described the process due in a parole hearing, including a preliminary probable cause

hearing before an independent hearing officer (and notice to the parolee of that hearing) and a final revocation hearing at which the parolee has the opportunity to be heard. Id. at 485-489. The process includes the "right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." Id. at 489.

The Seventh Circuit has interpreted that parenthetical phrase—"unless the hearing officer specifically finds good cause for not allowing confrontation"—as permitting "the admission of *reliable* hearsay at revocation hearings without a specific showing of good cause." United States v. Mosley, 759 F.3d 664, 667 (7th Cir. 2014) (quoting Kelly, 446 F.3d at 692); see also Schmanke, 207 F. App'x at 658 (7th Cir. 2006) (citing Kelley, 446 F.3d at 692); United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995)). "Hearsay is reliable if it 'bears substantial guarantees of trust-worthiness.'" Mosley, 759 F.3d at 667 (quoting Kelley, 446 F.3d at 692). The Seventh Circuit "essentially treats a finding of 'substantial trustworthiness' as the equivalent of a good cause finding for the admission of hearsay." Id. (quoting Kelley, 446 F.3d at 692). "If the record so establishes, the admission of hearsay will 'not undermine the fundamental fairness of [a defendant's] revocation hearing and [will] not violate his right to due process.'" Id. (quoting Kelley, 446 F.3d at 693).

The Wisconsin Court of Appeals concluded that the ALJ did not violate the petitioner's confrontation and due process rights when he considered K.C.'s hearsay statements. Dkt. No. 20-3 at 5. It reasoned that the ALJ (1) "found the evidence reliable," (2) "properly considered testimony and reports that

10

contained hearsay, as the technical rules of evidence do not apply at revocation hearings," (3) "found K.C.'s initial statements to the responding officer admissible as excited utterances," (4) "found the responding officer's and the agent's testimonies and the other investigating officer's report credible," (5) "found K.C.'s written statement to be consistent with what she initially told police," and (6) "specifically found good cause for K.C.'s non-appearance, because it reasonably could be inferred that she either was physically unable to attend or feared for her life if she testified against [the petitioner]." Id. The court noted that under state law, "[a] decision based entirely on hearsay is sufficient to prove a probation violation 'so long as the hearsay is reliable.'" Id. (quoting State ex rel. Simpson v. Schwarz, 250 Wis. 2d 214, 234 n.6 (Ct. App. 2001)).

The petitioner states that had K.C. appeared in person at his revocation hearing, the petitioner could have used medical records to "show a history of mental illness and illicit drug use" and otherwise demonstrate inconsistency in her statements. Dkt. No. 21 at 4-5. He argues that the ALJ failed to show good cause "for not allowing KC to testify." Id. at 8.

The respondent argues that the Wisconsin Court of Appeals correctly determined that "[the petitioner's] due process and confrontation rights were not abridged." Dkt. No. 24 at 8. She stresses that the ALJ properly admitted the statement, and that upon doing so, "expressly found good cause for K.C. not to appear and found the written statement to be 'truthful and reliable and substantial evidence under the circumstances.'" Id. The respondent states that

11

"the ALJ found that the statement was made more reliable by the fact that it constituted an excited utterance." Id. at 8-9. According to the respondent, the ALJ found "substantial indices of trustworthiness in the circumstantial evidence that the Department submitted, even without [K.C.'s] testimony." Id. at 9. She emphasizes that the ALJ's decision "summarized all the physical evidence that corroborated K.C.'s statement," noting that (1) the petitioner and K.C. had recently started living together, (2) "[b]loodied sheets were found stashed in a nearby alley garbage can," and (3) "[a] hammer was found outside a closet in the offender's sister's upstairs unit that matched the description of the hammer that [K.C.] told police that the offender had used."

The Wisconsin Court of Appeals did not unreasonably apply federal law as determined by the United States Supreme Court when it concluded that the ALJ properly considered K.C.'s hearsay statements. The ALJ complied with the requirements in Morrissey. While the ALJ considered K.C.'s hearsay, he did so only upon finding K.C.'s statements reliable. Further, the ALJ expressly found good cause for K.C.'s failure to appear. The petitioner disagrees with the conclusions of the ALJ and Court of Appeals, but that disagreement is not a basis for *habeas* relief. He has not shown that those decisions to constitute unreasonable applications of federal law. The ALJ reasonably found K.C.'s statements reliable enough to consider them when revoking the petitioner's probation.

The court will deny the petition and dismiss the case.

### III. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). The court declines to issue a certificate of appealability because reasonable jurists could not debate that the petitioner is not entitled to *habeas* relief under 28 U.S.C. §2254.

### IV. Conclusion

The court **DENIES** the petition for writ of *habeas corpus*. Dkt. No. 1.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

The court **DECLINES TO ISSUE** a certificate of appealability.

Dated in Milwaukee, Wisconsin this 30th day of June, 2021.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**